**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ALFRED BARTONE, | : | CIVIL ACTION NO. 11-8 (MLC) |
| | : | |
| Plaintiff, | : | **MEMORANDUM OPINION** |
| | : | |
| v. | : | |
| | : | |
| NETJETS, INC., et al., | : | |
| | : | |
| Defendants. | : | |

**COOPER, District Judge**

The plaintiff, Alfred Bartone ("Plaintiff"), brings this
action alleging violations of the Age Discrimination in
Employment Act ("ADEA") and New Jersey Law Against Discrimination
("NJLAD"), N.J.S.A. § 10:5-1 et seq., as well as state law claims
for defamation and tortious interference with prospective
economic advantage.  (Dkt. entry no. 1, Compl.)  The defendants,
NetJets, Inc., David Sokol, NetJets Services, Inc., and NetJets
Executive Services, Inc. (collectively, "Defendants"), now move
to dismiss the NJLAD claim insofar as it is asserted against
Sokol, as well as the defamation and tortious interference
claims, pursuant to Federal Rule of Civil Procedure ("Rule")
12(b)(6).  (Dkt. entry no. 7, Mot. Dismiss.)[1]  Defendants also

---

[1]  "NetJets Executive Services, Inc." is a misnomer for "NJ
Executive Services, Inc."  (Dkt. entry no. 7, Def. Br. at 1.)  NJ
Executive Services, Inc., and NetJets Services, Inc., are wholly-
owned subsidiaries of NetJets, Inc., a Delaware corporation with
its principal place of business in Columbus, Ohio.  (Id.)  Sokol
is the CEO of NetJets, Inc.  (Id. at 1, 4.)

move to dismiss the Complaint insofar as asserted against Sokol for lack of personal jurisdiction, pursuant to Rule 12(b)(2). (Id.)  Plaintiff opposes the motion.  (Dkt. entry no. 13, Pl. Br.)  The Court determines the motion on the briefs without an oral hearing, pursuant to Rule 78(b).  For the reasons stated herein, the Court will grant the motion.

## BACKGROUND

Plaintiff was employed as a sales executive at Defendants' office at Teterboro Airport in New Jersey from 1998 until June 1, 2010.  (Compl. at ¶¶ 5, 7-8.)  At the time of his termination, he was 65 years old.  (Id. at ¶ 4.)

Plaintiff alleges that Defendants implemented a new sales plan on or about January 1, 2010, that would make "significant changes to the earned commission structure" and would impact Plaintiff's ability to earn his previously high level of commissions.  (Id. at ¶ 12.)  Plaintiff requested that he be issued a sales territory so as to preserve his ability to earn commissions going forward.  (Id.)  Plaintiff states that he was assured by his immediate supervisor at the time that the supervisor was working to secure and assign the New England territory to Plaintiff.  (Id. at ¶ 13.)  The supervisor either resigned or was terminated shortly thereafter, however.  (Id. at ¶ 14.)

Plaintiff alleges that although younger, less experienced
sales executives were assigned sales territories, he ultimately
was denied the same.  (Id. at ¶ 16.)  On or about May 8, 2010,
Plaintiff received a telephone call from his supervisor, advising
that he would not be assigned a sales territory and that the
company had decided to "go in a different direction."  (Id. at ¶
17.)  Soon thereafter, Plaintiff received an undated and unsigned
"Confidential Severance Agreement and Release of Claims," which
he did not execute.  (Id.)  Plaintiff then received a telephone
call on or about June 1, 2010, informing him that his employment
was terminated, effective immediately.  (Id. at ¶ 18.)  No reason
was given for his termination at that time.  (Id.)  Plaintiff
alleges that Defendants have subsequently asserted that Plaintiff
was terminated for performance reasons, which Plaintiff disputes.
(Id. at ¶ 19.)

Plaintiff alleges that Defendants made a decision "to create
a younger work sales and executive team . . . by terminating high
performing older employees such as Plaintiff."  (Id. at ¶ 23.)
In support of this contention, Plaintiff points to an August 16,
2010, televised interview of Sokol that aired on Bloomberg
Television in which Sokol allegedly stated, "I've got a
tremendously talented young management team in place now. . . .
We have a great young team."  (Id. at ¶ 24.)  Thus, Plaintiff
posits that any performance-related reasons proffered for his

3

termination are pretext for Defendants' age discrimination.  (Id. at ¶ 19.)

Plaintiff further alleges that Sokol defamed Plaintiff in December 2010 by telling Plaintiff's current employer, Jet Aviation, that Plaintiff "was publicly saying negative things about NetJets and the people that worked at NetJets."  (Id. at ¶¶ 32-33.)  Sokol and the president of Jet Aviation were apparently in negotiations to do business together at the time, and Sokol allegedly "communicated his expectation that future business for [Plaintiff's] employer was dependent upon quieting Mr. Bartone." (Id.)  Plaintiff avers that these alleged statements were false, and harmed Plaintiff's reputation.  (Id. at ¶ 34.)  The statements also form the basis of Plaintiff's tortious interference claim, insofar as Plaintiff alleges that the statements interfered with his current employment situation, and therefore his ability to mitigate his damages.  (Id. at ¶¶ 37-38.)

## DISCUSSION

## I.  Applicable Legal Standards

### A.   Rule 12(b)(6) Standard

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of

4

the complaint, the plaintiff may be entitled to relief."
Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.
2008).  At this stage, a "complaint must contain sufficient
factual matter, accepted as true to 'state a claim to relief that
is plausible on its face.'  A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949
(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556
(2007)).  "[W]here the well-pleaded facts do not permit the court
to infer more than the mere possibility of misconduct, the
complaint has alleged--but it has not 'show[n]'--that the
'pleader is entitled to relief.'"  Iqbal, 129 S.Ct. at 1950
(quoting Rule 8(a)(2)).

B.  **Personal Jurisdiction**

Rule 4(e) allows a district court to assert personal
jurisdiction over a non-resident defendant to the extent
permitted by the law of the state where the district court sits.
See Fed.R.Civ.P. 4(e).  New Jersey's long-arm statute, N.J.Ct.R.
4:4-4, permits a court to exercise personal jurisdiction over a
non-resident defendant to the furthest extent allowed by the
United States Constitution.  Miller Yacht Sales, Inc. v. Smith,
384 F.3d 93, 96 (3d Cir. 2004); see Avdel Corp. v. Mecure, 277
A.2d 207, 209 (N.J. 1971) (noting that New Jersey's long-arm

5

statute allows out-of-state service "to the uttermost limits permitted by the United States Constitution").  The Fourteenth Amendment Due Process Clause, however, prohibits the exercise of personal jurisdiction "over a nonresident defendant who does not have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  <u>Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n</u>, 819 F.2d 434, 437 (3d Cir. 1987) (internal quotations omitted; alteration in original).

A defendant's purposeful conduct and connection with the forum state must be such that the defendant "should reasonably anticipate being haled into court there."  <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).  "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958).  The purposeful availment requirement ensures that a defendant will not be required to litigate in a forum solely as a result of "random," "fortuitous," or "attenuated" contacts, or the unilateral activity of another person.  <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985); <u>see also</u> <u>Hanson</u>, 357 U.S. at 253.

6

Once a defendant raises lack of personal jurisdiction as a defense, the plaintiff must demonstrate that the defendant has sufficient contacts with the forum to justify the exercise of jurisdiction.  <u>N. Penn Gas Co. v. Corning Natural Gas Corp.</u>, 897 F.2d 687, 689 (3d Cir. 1990); <u>Provident Nat'l Bank</u>, 819 F.2d at 437.  A plaintiff may meet this burden by establishing that the court has either "general" or "specific" jurisdiction.  <u>Provident Nat'l Bank</u>, 819 F.2d at 437.  A plaintiff need only make a prima facie demonstration of jurisdiction by showing with sufficient particularity the presence of contacts between the defendant and the forum.  <u>See, e.g.</u>, <u>Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino</u>, 960 F.2d 1217, 1223 (3d Cir. 1992).

General jurisdiction exists when the defendant has continuous contacts with the forum state that are unrelated to the events forming the basis of the cause of action.  <u>See Provident Nat'l Bank</u>, 819 F.2d at 437; <u>Machulsky v. Hall</u>, 210 F.Supp.2d 531, 538 (D.N.J. 2002).  To establish general jurisdiction, a plaintiff must show significantly more than mere minimum contacts with the forum state.  <u>Provident Nat'l Bank</u>, 819 F.2d at 437; <u>Decker v. Circus Circus Hotel</u>, 49 F.Supp.2d 743, 747 (D.N.J. 1999).  A plaintiff bears the "rigorous" burden of demonstrating that the defendant has "continuous and systematic" contacts with the forum state such that the defendant should expect to be haled into court on any cause of action.

7

Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408,
414-16, 415 n.9 (1984); Provident Nat'l Bank, 819 F.2d at 437.

    Specific jurisdiction over a defendant exists when the
defendant has purposefully directed activities at residents of
the forum and the claim directly relates to or arises out of
those activities.  Burger King Corp., 471 U.S. at 472; Miller
Yacht Sales, Inc., 384 F.3d at 96.  The activities must "rise to
the level of minimum contacts with the state, such that the
defendant should reasonably anticipate being haled into court
there."  Exton v. Our Farm, Inc., 943 F.Supp. 432, 438 (D.N.J.
1996).  The critical factor is whether the defendant "purposely
avail[ed] itself of the privilege of conducting activities with
the forum State."  Machulsky, 210 F.Supp.2d at 538.  Jurisdiction
is proper where the contacts proximately result from the
defendant's own actions, which create a substantial connection
with the forum.  Burger King Corp., 471 U.S. at 475.  Although a
defendant's entrance into the forum state enhances the
defendant's affiliation with that forum, physical entrance into
the forum is not required.  Id. at 476.

    If a court determines that the defendant has purposefully
established minimum contacts with the forum state, then the court
must decide whether the exercise of personal jurisdiction
comports with "fair play and substantial justice."  Id.  In
addressing this question, a court may consider "the burden on the

defendant, the forum State's interest in adjudicating the
dispute, the plaintiff's interest in obtaining the most efficient
resolution of controversies, and the shared interest of the
several States in furthering fundamental substantive social
policies." Miller Yacht Sales, Inc., 384 F.3d at 97 (quotation
and citation omitted).  Only rarely will the fairness requirement
defeat jurisdiction where a defendant has purposefully engaged in
forum activities.  Decker, 49 F.Supp.2d at 746.

### C.   Personal Jurisdiction in Intentional Tort Cases

The standard for personal jurisdiction in intentional tort
cases is the "effects test," which derives from the Supreme Court
decision in Calder v. Jones, 465 U.S. 783 (1984).  Lawn Doctor,
Inc. v. Branon, No. 07-04735, 2008 WL 2064477, at *4 (D.N.J. May
14, 2008).  Calder recognized that, in certain cases, "the
plaintiff's residence in the forum may, because of defendant's
relationship with the plaintiff, enhance defendant's contacts
with the forum." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254,
265 (3d Cir. 1998) (internal quotation and citation omitted).
The "effects test" is used to determine "personal jurisdiction
over nonresident defendants who allegedly committed an
intentional tort outside the forum." Remick v. Manfredy, 238
F.3d 248, 258 (3d Cir. 2001).

There are three prongs to the "effects test" to determine
personal jurisdiction in intentional business tort cases.  See

9

IMO Indus., Inc., 155 F.3d at 261-66.  The plaintiff must show (1) the defendant's act was an intentional tort, (2) the brunt of the harm was felt by the plaintiff in the forum state "such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort," and (3) the defendant's tortious conduct was "expressly aimed" at the forum state "such that the forum can be said to be the focal point of the tortious activity."  Id. at 265-66.  The tortious conduct must be aimed at the plaintiff specifically and not another party.  See id. at 267.

## II.  Legal Standards Applied Here

### A.  Motion to Dismiss for Failure to State a Claim

#### 1.  NJLAD Claim

The NJLAD prohibits an employer from discriminating on the basis of, inter alia, age.  N.J.S.A. § 10:5-12(a).  It also prohibits "any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under the [NJLAD]."  Id. § 10:5-12(e).  Defendants move to dismiss the NJLAD claim insofar as it is asserted against Sokol for aiding and abetting the Defendants' alleged age discrimination.  (Def. Br. at 13-15; Compl. at ¶ 29.)[2]

---

[2] Plaintiff's ADEA claim is not asserted against Sokol, nor could it be; unlike the NJLAD, "the ADEA does not provide for individual liability."  Hill v. Borough of Kutztown, 455 F.3d 225, 246 n.29 (3d Cir. 2006).

10

To impose individual liability for aiding and abetting discrimination under the NJLAD, a plaintiff must show that the defendant (1) aided another in performing a wrongful act that causes an injury, (2) is generally aware of his role as part of an overall illegal or tortious activity at the time he provided such assistance, and (3) knowingly and substantially assisted the principal violation.  Tarr v. Ciasulli, 853 A.2d 921, 929 (N.J. 2004) (citing Hurley v. Atl. City Police Dep't, 174 F.3d 95, 127 (3d Cir. 1999)).  In determining whether the defendant meets the third prong, providing "substantial assistance" to the principal violator, the Court evaluates five factors:  (1) the nature of the act encouraged, (2) the amount of assistance given by the defendant, (3) whether the defendant was present at the time of the alleged violation, (4) the defendant's relations to others, and (5) the defendant's state of mind.  Id. (citing Restatement (Second) of Torts § 876(b), comment d (1977)).

The Complaint alleges that "Defendants violated the [NJLAD] in that they condoned, ratified, aided and abetted each other's discriminatory conduct against Plaintiff," and that as a result, Plaintiff "endured significant damages including, but not limited to, physical and bodily injuries, severe emotional distress, humiliation, embarrassment, anguish, personal hardship, career and social disruption, psychological and emotional harm, economic losses, lost employment opportunities, and other such damages."

(Compl. at ¶¶ 29-30.)  With respect to Sokol specifically, Plaintiff merely alleges that he was "intimately involved" in the decision to terminate Plaintiff.  (Id. at ¶ 23.)

Plaintiff argues that the fact that Sokol made references to a "tremendously talented young management team" or "a great young team" in a television interview three months after Plaintiff's termination shows that Sokol must have "encouraged or ordered the termination of older workers, including Mr. Bartone."  (Id. at ¶ 24; Pl. Br. at 15.)  This contention does not satisfy Plaintiff's burden under Iqbal of pleading "'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Jones v. Ewing Twp. Bd. of Educ., No. 09-3536, 2010 WL 715554, at *6 (D.N.J. Feb. 26, 2010) (quoting Iqbal, 129 S.Ct. at 1949) (holding that a single comment by school principal admitting to student's mother, after student was sexually assaulted by peer, that principal had been aware of peer's violent and sexually hostile propensities, would not support a claim for aiding and abetting under the NJLAD).

Factual allegations regarding other individuals who are alleged to have communicated with Plaintiff regarding the sales territory assignment issue and his termination, as pleaded, appear to have no nexus to Sokol whatsoever and thus are irrelevant to a claim for aiding and abetting under the NJLAD against Sokol.  See Cicchetti v. Morris Cnty. Sheriff's Office,

947 A.2d 626, 645-46 (N.J. 2008) (finding that appellate panel erred in conflating "the significance of a supervisor's act as a basis for an employer's liability with the significance of those same acts for purposes of the supervisor's individual liability").  The conclusory allegation that Sokol was "intimately involved" in the decisions leading to such communications will not suffice to demonstrate that Sokol provided "substantial assistance" in the alleged discriminatory actions.  (Compl. at ¶¶ 16-19; Pl. Br. at 14.)  "Individual liability, . . . even in the context of failure to act, 'require[s] active and purposeful conduct,'" and Plaintiff has alleged no facts regarding any purposeful conduct on the part of Sokol other than Sokol's comments in a television interview months after Plaintiff's termination.  Doe v. Schwerzler, No. 06-3529, 2008 WL 4066338, at *5-6 (D.N.J. Aug. 27, 2008) (quoting Tarr, 853 A.2d at 929); see also Cicchetti, 947 A.2d at 646.

Accordingly, we will grant Defendants' motion insofar as it seeks dismissal of the NJLAD claim against Sokol.  See Schwerzler, 2008 WL 4066338, at *5 (observing that an individual may only be held liable under the NJLAD as an "aider and abettor").  The NJLAD claim apparently remains viable against the NetJets corporate entities.  See Ivan v. Cnty. of Middlesex, 595 F.Supp.2d 425, 458-60 (D.N.J. 2009) (discussing vicarious liability under the NJLAD).

2.    **Defamation Claim**

A plaintiff bringing a claim for defamation must show, "in addition to damages, . . . (1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting to at least negligence by the publisher." DeAngelis v. Hill, 847 A.2d 1261, 1267-68 (N.J. 2004) (emphasis added) (citing Restatement (Second) of Torts § 559 (1977)).  Whether a statement is defamatory is a question of law for the Court to resolve by considering the content, verifiability, and context of the challenged statement.  Id. at 1268.

Defendants contend that the defamation claim, which is asserted solely against Sokol, must be dismissed for failure to state a claim either because (1) Plaintiff has not shown that he suffered damages, or (2) the statements attributed to Sokol are subject to a qualified privilege.  (Def. Br. at 15.)  Plaintiff does not address in his opposition brief the charge that he failed to plead special damages, but contends that he has sufficiently alleged each of the remaining elements of a defamation claim, and that the Court's consideration of the affirmative defense of qualified privilege would be procedurally improper at this juncture.  (Pl. Br. at 18-21.)

A defamation plaintiff must plead and ultimately prove special damages, which are defined as "harm of a material or

14

pecuniary nature." <u>Ward v. Zelikovsky</u>, 643 A.2d 972, 984 (N.J. 1994); <u>see also</u> <u>Sisler v. Gannett Co., Inc.</u>, 516 A.2d 1083, 1096 (N.J. 1986) (holding that even though injury to reputation "defies exact measurement," a plaintiff "should offer some concrete proof that his reputation has been injured"). A plaintiff's own testimony or "inferred" damages will not suffice. <u>Ward</u>, 643 A.2d at 984. The damages element is waived only in the instance that the allegedly defamatory statement clearly falls into one of the four categories of slander <u>per se</u>, which are "statements that impute (1) commission of a crime, (2) contraction of a loathsome disease, (3) occupational incompetence or misconduct, and (4) unchastity of a woman." <u>Id.</u> at 977.

Defendants contend that Sokol's alleged statement to Plaintiff's current employer, that Plaintiff "was publicly saying negative things about NetJets and the people that worked at NetJets," does not fall into the third category of slander <u>per se</u> because the statement "does not implicate Plaintiff's profession as a salesperson in any way," but rather "could be said about <u>any</u> individual irrespective of the subject's profession or business." (Def. Br. at 18.) We agree that the alleged statement is too general to fall within the scope of occupational incompetence or misconduct. In any event, Plaintiff failed to specifically allege slander <u>per se</u>, rendering the question academic. (Compl.

at ¶¶ 32-34.)  See Nat'l Bowl-O-Mat Corp. v. Brunswick Corp., 264 F.Supp. 221, 227 (D.N.J. 1967).

Because Plaintiff's defamation claim does not fall within slander per se, he was required to plead special damages.  The Complaint is bereft of any specific facts alleging damages, either in the form of pecuniary harm or that "an existing relationship has been seriously disrupted."  Sisler, 516 A.2d at 1096.  Plaintiff's bare assertion that Sokol's allegedly false statements that Plaintiff was saying negative things about NetJets "have harmed Mr. Bartone's reputation" is an unsupported conclusion and deficient under the Iqbal pleading standard. (Compl. at ¶ 34.)

Because the Complaint, on its face, fails to state a claim for defamation in that it does not allege reputational harm of a material or pecuniary nature, we decline to address Defendants' argument that the statement is subject to a qualified privilege.

### 3.   Tortious Interference Claim

To state a claim for tortious interference with prospective economic advantage, a plaintiff must allege "(1) a reasonable expectation of economic advantage from a prospective contractual or economic relationship; (2) the defendant intentionally and maliciously interfered with the relationship; (3) the interference caused the loss of the expected advantage; and (4) actual damages resulted."  Am. Leistritz Extruder Corp. v.

Polymer Concentrates, Inc., 363 Fed.Appx. 963, 967 (3d Cir. 2010) (emphasis added); accord Printing Mart-Morristown v. Sharp Elec. Corp., 563 A.2d 31, 37 (N.J. 1989).

Plaintiff's assertion that he "has, and is likely to continue, to sustain economic loss as a direct result of" Sokol's alleged statements to his current employer, as with his defamation claim, lacks the factual support necessary to satisfy his pleading burden.  Damage is "an essential element of the malicious interference cause of action."  Norwood Easthill Assocs. v. Norwood Easthill Watch, 536 A.2d 1317, 1320 (N.J. App. Div. 1988).  Thus, even presuming the other elements of the cause of action have been sufficiently alleged, dismissal of this claim is appropriate, as the tortious interference claim is predicated on the same conduct as the defamation claim.  See Prof. Recovery Servs., Inc. v. Gen. Elec. Capital Corp., 642 F.Supp.2d 391, 408 (D.N.J. 2009) (noting that where tortious interference claim was "based on allegedly defamatory statements and the defamation cause of action fails for lack of evidentiary support, the tortious interference claim necessarily fails as well").  Accordingly, the tortious interference claim, which is asserted against Sokol only, will be dismissed.

**B.  Motion to Dismiss for Lack of Personal Jurisdiction**

Having determined that Plaintiff has not stated a claim under the NJLAD or for defamation or tortious interference

against Sokol, and intending to dismiss the Complaint insofar as
asserted against him, we could decline at this juncture to
address the question of whether Sokol is subject to personal
jurisdiction in New Jersey.  We will nevertheless conduct a
jurisdictional analysis so as to determine whether amendment of
the Complaint would be futile.  See Foman v. Davis, 371 U.S. 178,
182 (1962) (observing that although Rule 15(a) requires that
leave to amend "shall be freely given when justice so requires,"
a district court may deny an opportunity to amend based on, inter
alia, futility of amendment); Rivera v. Wal-Mart Stores, Inc.,
No. 05-4416, 2005 WL 3488755, at *1 (E.D. Pa. Dec. 20, 2005)
(stating that amendment would be futile where it appeared court
lacked personal jurisdiction over proposed new defendant).

    Defendants point out that "a person is not automatically
subject to personal jurisdiction simply because they are a
corporate officer" of a corporation that does business in the
forum state; rather, that person's contacts with the forum state
must be evaluated individually.  (Def. Br. at 6 (quoting N.V.E.
Inc. v. Cosmetic Indus. & Trade Corp., No. 09-3412, 2010 WL
1381482, at *4 (D.N.J. Apr. 5, 2010)).)  Defendants contend that
Sokol, who is a citizen of Nebraska, lacks such minimum contacts
with New Jersey to support this Court's exercise of either
specific or general jurisdiction.  (Def. Br. at 9.)  Plaintiff,
in response, argues that Sokol has "more than adequate" contacts

with New Jersey, including regularly using the Teterboro Airport
in New Jersey for travel to "frequent media interviews" in New
York and deriving a "significant portion of his compensation"
from NetJets' commercial transactions in New Jersey.  (Pl. Br. at
7, 9.)  Plaintiff also argues that specific jurisdiction is
proper because "the tortious allegations asserted against Mr.
Sokol arose out of Mr. Bartone's employment and termination while
Mr. Bartone lived and worked in New Jersey."  (Id. at 9.)

    Sokol states in a Declaration provided to the Court that he:
(1) is the Chairman of the Board of Directors, President, and
Chief Executive Officer of NetJets, Inc., and has served in that
position since August 2009; (2) is a resident of Omaha, Nebraska;
(3) does not own any property in New Jersey; (4) has not resided
in New Jersey since 1990; (5) has no bank accounts or funds in
New Jersey; (6) regularly uses New Jersey's Teterboro Airport to
attend meetings in New York City, and occasionally travels
through Newark Liberty Airport as well; and (7) visited the
NetJets office in Woodbridge, New Jersey, on August 1-4, 2009,
which was closed as of November 2009, "to effect a change in the
top management of NetJets," and not for the purpose of anything
related to Plaintiff or his employment at NetJets.  (Dkt. entry
no. 7, Sokol Decl., ¶¶ 1-8.)  With respect to Plaintiff's
allegations, Sokol further declares that (1) he was informed of
the decision to terminate Plaintiff during the course of a

conversation that took place between himself and NetJets' Senior Vice President of Sales, Marketing and Service, Adam Johnson, at NetJets headquarters in Columbus, Ohio, in May 2010; (2) Jet Aviation, Inc., "is a business partner of NetJets"; (3) Sokol attended a meeting with the president of Jet Aviation, Peter Edwards, on November 19, 2010, at NetJets headquarters in Columbus, Ohio; and (4) the November 19, 2010 meeting was the only meeting Sokol has ever had with Jet Aviation's president. (Id. at ¶¶ 9-10.)

We find no basis for the exercise of specific jurisdiction over Sokol.  None of Plaintiff's causes of action are predicated on any activity by Sokol occurring in or related to New Jersey. N. Penn Gas Co., 897 F.2d at 690 ("Specific jurisdiction is invoked when the cause of action arises from the defendant's forum related activities."); Provident Nat'l Bank, 819 F.2d at 437 (describing specific jurisdiction as present when "the particular cause of action sued upon arose from the defendant's activities within the forum state").  Rather, the NJLAD claim for aiding and abetting pertains to an employment termination decision made by Johnson and presented to Sokol in Ohio, and the defamation and intentional interference claims pertain to a conversation between Sokol and Peter Edwards of Jet Aviation in Ohio.  (Sokol Decl. at ¶¶ 9-10.)  These events are not indicative of Sokol's purposefully availing himself of the privilege of

conducting activities within the forum state.  See, e.g., Quality Signature Homes, Inc. v. Kennedy Funding, Inc., No. 08-2759, 2009 WL 235357, at *2 (D.N.J. Jan. 29, 2009) (declining to exercise specific jurisdiction, where there was "no allegation that Defendants ever entered New Jersey in connection with the transaction that forms the basis of Plaintiff's fraud claim").

Nor is Sokol amenable to personal jurisdiction in New Jersey pursuant to the Calder "effects test."  Although Plaintiff has alleged that Sokol committed intentional torts, the brunt of which were felt by Plaintiff in New Jersey, where he lives and works, the requirement that out-of-forum tortious conduct be "expressly aimed" at the forum state and directed to the plaintiff specifically, as opposed to another party, is not met here.  See Remick, 238 F.3d at 259 (finding first two elements of Calder effects test satisfied, but because allegedly defamatory fax was not shown to have been published in or targeted at anyone in forum state, alleged defamation provided no basis for personal jurisdiction); IMO Indus., Inc., 155 F.3d at 261, 265-67.  There is absolutely no indication that New Jersey "was the focal point of the tortious activity" so as to support personal jurisdiction over Sokol for activities that took place in Ohio.  Remick, 238 F.3d at 259.

Plaintiff also asserts that Sokol is subject to general jurisdiction in New Jersey, which requires that the defendant

21

have "continuous and systematic" contacts with the forum state.
Helicopteros, 466 U.S. at 415-16 (stating that where claims did
not arise out of, and were not related to, defendant's activities
in forum state, court must "explore the nature of [defendant's]
contacts with the State of Texas to determine whether they
constitute the kind of continuous and systematic general business
contacts" that would support the exercise of general
jurisdiction).  (Pl. Br. at 11.)  Plaintiff bases this argument
on Sokol's admission that he regularly travels through New
Jersey's Teterboro Airport and, to a lesser extent, Newark
Airport, in both his individual capacity and as an officer of
NetJets.  (Id. at 11-12.)[3]

    Passing through a New Jersey airport as a means of traveling
to New York City or, in another example of Sokol's intermittent
physical presence in New Jersey alleged by Plaintiff, attending a
New York Giants game at the Meadowlands, does not represent the
type of "continuous and systematic" contact required to establish

_____

    [3] In support of this argument, Plaintiff further argues that
because "in-hand" service of process could theoretically be
achieved "the next time [Sokol] flew in or out of Teterboro,"
personal jurisdiction would be proper under Burnham v. Superior
Court of Cal., 495 U.S. 604, 610-16 (1990) (upholding continued
validity of "personal service upon a physically present defendant
. . . without regard to whether . . . the cause of action was
related to his activities there" as a basis for exercise of
personal jurisdiction).  (Pl. Br. at 12.)  We reject out of hand
Plaintiff's unsupported assertion that because Plaintiff could
have served Sokol with process in New Jersey, the Court should
(or must) exercise personal jurisdiction over Sokol.

general jurisdiction.  (Pl. Br. at 3.)  See Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 438 (1952) (upholding general jurisdiction over foreign corporation "carrying on in Ohio a continuous and systematic, but limited, part of its general business"); Copterline Oy v. Sikorsky Aircraft Corp., 649 F.Supp.2d 5, 17 n.12 (E.D.N.Y. 2007) (holding that defendant's "utilization of JFK airport for the delivery of its goods outside of the country, while advantageous to [defendant], does not subject [defendant] to general jurisdiction in New York"); Belisario v. Lawrence, No. 88-9796, 1989 WL 71236, at *1 (E.D. Pa. June 23, 1989) (declining to exercise general jurisdiction over New Jersey defendant who owned no real estate in Pennsylvania, did not live or work in Pennsylvania, and visited the state infrequently solely for the purpose of using the airport).  And Sokol's concession of attending a meeting in Woodbridge, New Jersey, in August 2009 is simply too isolated an event to constitute "continuous and systematic" contacts.  (Sokol Decl. at ¶ 8.)  See Exton, 943 F.Supp. at 440 (holding that defendant's sporadic contacts with New Jersey, including "the occasional presence of Our Farm's racehorses in New Jersey and the periodic business Our Farm conducts with New Jersey trainers," did not establish general jurisdiction).

Plaintiff's allegations of NetJets' continuous and systematic business activities in New Jersey are irrelevant to

the question of whether Sokol is subject to general jurisdiction in his individual capacity. (Pl. Br. at 9.) <u>Nicholas v. Saul Stone & Co., LLC</u>, No. 97-860, 1998 WL 34111036, at *10-11 (D.N.J. June 30, 1998), <u>aff'd</u>, 224 F.3d 179 (3d Cir. 2000). Defendants do not contend that any of the NetJets entities named in the Complaint are not subject to personal jurisdiction in New Jersey.

For the foregoing reasons, we conclude that Sokol is not subject to either specific or general jurisdiction in New Jersey, and will dismiss the Complaint insofar as asserted against Sokol pursuant to Rule 12(b)(2).

**CONCLUSION**

The Court, for the reasons stated <u>supra</u>, will grant Defendants' motion to dismiss the Complaint insofar as it is asserted against Sokol. Because amendment of the claims asserted against Sokol would be futile insofar as Sokol is not subject to personal jurisdiction in New Jersey, dismissal of those claims will be with prejudice. The Court will issue an appropriate order.


                                    s/ Mary L. Cooper
                                  **MARY L. COOPER**
                                  United States District Judge

Dated:    June 24, 2011